RESOLUCIÓN
Examinada la Moción de Reconsideración presentada por el Estado Libre Asociado, se declara “no ha lugar”.
Contrario a lo dispuesto en la Regla 34(d) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, dicho escrito trae ante nuestra consideración en esta etapa apelativa una prueba que no dilucidó el Tribunal de Primera Instancia.
Claramente, tanto la sentencia del foro de instancia *767 como nuestro dictamen del pasado 31 de julio de 2008 se limitó a la controversia sobre la clasificación jurídica de los terrenos ganados al mar en el Coast Guard Parcel y en el Condado Bay Parcel. Los demás asuntos relacionados con la investigación sobre Paseo Caribe —iniciada por el Estado— no estuvieron ante la consideración ni del foro de instancia ni de este Tribunal en el presente caso. Nuestra decisión no impide cualquier otra acción judicial o administrativa que proceda en derecho de acuerdo con los hallazgos de la mencionada investigación.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Todos los Jueces intervienen por Regla de Necesidad. El Juez Presidente Señor Hernández Denton emitió un voto particular de conformidad. La Jueza Asociada Señora Piol Matta reconsideraría parcialmente por los fundamentos expuestos en su opinión disidente y concurrente en San Gerónimo Caribe Project v. E.L.A. I, 174 D.P.R. 518 (2008) y concurrió en cuanto a que la decisión tomada no impide cualquier otra acción judicial o administrativa que proceda en derecho en conformidad con la investigación sobre la cual informa el Procurador General.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto particular de conformidad emitido por el
Juez Presidente Señor Hernández Denton.
Estamos conformes con la Resolución emitida por este Tribunal en la cual se deniega la Moción de Reconsideración presentada por el Estado Libre Asociado de Puerto Rico en el presente caso. No obstante, consideramos meritorio expresarnos de forma particular para hacer constar claramente nuestra posición sobre dicho escrito.
*768 I
En primer lugar, es menester aclarar de qué trata —y de qué no trata— la controversia que tuvo ante su consideración este Tribunal y que se resolvió finalmente en San Gerónimo Caribe Project v. E.L.A. I, 174 D.P.R. 518 (2008). Desde el inicio de la opinión del Tribunal, enfatizamos que la controversia a resolver era, pues, si los terrenos ganados al mar en los predios del Proyecto Paseo Caribe son bienes patrimoniales o de dominio público. Esa fue la controversia de estricto derecho que estipularon todas las partes involucradas en el presente caso y el único asunto sobre el cual se presentó prueba ante el Tribunal de Primera Instancia. Como bien indica el propio Estado, la adjudicación de este asunto particular no precisaba de investigaciones posteriores, de descubrimiento de prueba adicional ni de deslindes ulteriores a los que ya existían al momento en que se estipularon los hechos y la controversia de umbral antes mencionada.
Por lo tanto, la única controversia que adjudicó, tanto este Tribunal como el foro de instancia fue precisamente aquella relacionada a la clasificación de los terrenos en donde se erige el referido proyecto. En ese sentido, nuestra opinión en San Gerónimo Caribe Project v. E.L.A. I, supra, se limitó a aplicar e interpretar lo que disponía claramente la ley vigente al momento en que se ganaron al mar los terrenos del Coast Guard Parcel en el 1941 y del Condado Bay Parcel en la década de los cincuenta.([1])
La naturaleza delimitada de nuestro dictamen responde a que la Demanda en Solicitud de Sentencia Declaratoria *769 que motivó este caso iba dirigida a los fines exclusivos de que se aclarara la incertidumbre que surgió como consecuencia de la publicación de la Opinión del Secretario de Justicia de 11 de diciembre de 2007, cuyas conclusiones se limitaban, precisamente, al asunto de estricto derecho sobre los terrenos ganados al mar. Fue en ese contexto que declaramos a San Gerónimo Caribe Project, Inc. (SGCP) como titular de los terrenos en controversia. Claramente, dicha declaración se circunscribe al asunto de la clasificación jurídica de los terrenos ganados al mar, y de ningún modo puede interpretarse como la concesión de un manto de legalidad o impunidad a favor de las múltiples transacciones jurídicas relacionadas a esos terrenos en la década de los noventa.
En aquella ocasión declaramos a SGCP como titular de los terrenos en controversia, no porque validáramos tales transacciones, sino porque éste es el titular que refleja el Registro de la Propiedad en cuanto a los predios privados en controversia. Opera aquí la presunción iuris tantum de exactitud registral y el principio de legitimación a favor del titular inscrito en el Registro de la Propiedad. Art. 104 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. see. 2354. Véase, además, L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Jurídica Editores, 2002, págs. 183-187.
De acuerdo con esa presunción, SGCP se encuentra legitimado según los asientos del Registro de la Propiedad para actuar en el tráfico jurídico y en los procedimientos judiciales como el titular de los terrenos en controversia. Al concluir que dichos terrenos no son de dominio público en conformidad con el Derecho aplicable, procedía declarar a SGCP como su titular para los únicos fines de resolver la demanda de sentencia declaratoria que se presentó ante nuestra consideración sobre la clasificación dominical de las parcelas rellenadas. ([2])
*770 Ahora bien, lo anterior no significa que el Estado esté impedido de presentar prueba para impugnar los derechos inscritos en el Registro de la Propiedad en conformidad con el Art. 104 de la Ley Hipotecaria, supra, o los permisos concedidos por múltiples agencias administrativas mediante la acción que proceda en derecho. De ninguna manera hemos prejuzgado la validez de las transacciones mencionadas ni la corrección de los deslindes realizados en los terrenos bajo controversia.
A su vez, resulta innegable que el presente caso estuvo dirigido en todo momento a resolver una controversia de estricto derecho sobre la clasificación de los terrenos ganados al mar. Durante el transcurso de este litigio, en ningún momento se presentó prueba sobre error o fraude en la concesión de los permisos o en la inscripción de los asientos pertinentes en el Registro de la Propiedad. Esa realidad no impide que el Estado presente ahora un caso reivindicatorío para dilucidar tales asuntos, sino que sencillamente refleja que dichas controversias no estuvieron, ni están en este momento, ante la consideración de los tribunales del país.
En vista de ello, nos sorprende que en esta etapa del caso, mediante una Moción de Reconsideración, se presenten por primera vez alegaciones de fraude e irregularidades en torno a las transacciones relacionadas a los terrenos en controversia. Este caso, desde su inicio hasta su adjudicación final, solamente ha versado sobre la clasificación de los terrenos ganados al mar. El propio Estado reconoce en la referida moción que los demás asuntos relacionados con las investigaciones sobre dicho proyecto, la posibilidad de que exista fraude y las circunstancias que rodearon los diversos negocios jurídicos nunca estuvieron realmente ante la consideración de este Foro en el presente caso.
Por ende, resulta contrario a la práctica apelativa y a la Regla 34(d) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, que se utilicen tales fundamentos y se presente una prueba que no fue dilucidada ante el foro de instancia —como el Informe de Análisis Espacial de la Ing. Linda L. Vélez Rodríguez— en el escrito de reconsidera *771 ción. Ciertamente, cualquier alegación de fraude o error relacionada a la inscripción de los derechos reales y a las transacciones jurídicas que ocurrieron con posterioridad a la desafectación de los terrenos rellenados, se debe canalizar mediante el procedimiento judicial o administrativo correspondiente, mas no en la acción de sentencia declaratoria que dio lugar al presente caso.
II
A modo de epílogo, conviene aclarar que nuestro dicta-men en el caso de epígrafe se tomó consciente de que los bienes de dominio público marítimo-terrestres son recursos naturales que gozan de protección constitucional. Véase Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1. Dicha determinación no modifica el ordenamiento vigente en lo que respecta a la zona marítimo-terrestre y las playas de nuestro país. Sencillamente, es una decisión que le da certeza y seguridad jurídica a ciertos terrenos que se originaron bajo el palio de un esquema administrativo que respondía a un contexto histórico diferente, pues éstos fueron rellenados a mediados del siglo pasado por el Departamento de la Marina y la Compañía de Fomento Industrial al amparo de un estado de derecho que permitía realizar tales obras a título patrimonial. ([3])
Sin embargo, nuestra decisión reconoce en todo momento el carácter público de las playas y el mar litoral puertorriqueño, por lo que exige que los terrenos ganados al mar no puedan interferir con la nueva zona marítimo-terrestre que se formó bajo ese viejo régimen privatizador. Además, la opinión reconoce que el referido esquema administrativo que permitió que tales terrenos se ganaran al mar ya perdió su *772 vigencia, dado que la Ley de Muelles y Puertos de Puerto Rico de 1968 —que por primera vez menciona expresamente a los terrenos ganados al mar en la definición de zona marítimo-terrestre— aplica prospectivamente. 23 L.P.R.A. secs. 2103(n) y 2111. Por consiguiente, nuestra determinación en el presente caso es cónsona con el mandato constitucional en cuanto a la protección y preservación de los bienes de dominio público marítimo-terrestres.
Así, pues, reiteramos que no podemos perder de perspectiva que la única controversia que se encontraba ante la consideración de este Tribunal era la naturaleza jurídica de ciertos terrenos ganados al mar muchos años antes de que la parte demandante los adquiriera para construir el controvertible proyecto. El Tribunal no pasó juicio sobre la corrección o la efectividad de esa política pública que permitía al Estado o a particulares realizar rellenos a título patrimonial a mediados del siglo pasado. Esa labor le corresponde exclusivamente a las ramas políticas que formularon y fomentaron dicha política desarrollista en un momento de nuestra historia, al igual que hicieron con diversos enfoques los gobiernos de Holanda y otros países del mundo. De igual modo, dicho dictamen tampoco pasó juicio sobre el valor estético de Paseo Caribe o su cumplimiento con los reglamentos aplicables de zonificación y uso de terrenos, pues estos asuntos no estaban relacionados con la controversia sobre la clasificación jurídica de los predios rellenados.
Como afirmamos en San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640 (2008), nada impide que de surgir información de fraude o error, o de incumplimiento con los reglamentos vigentes, tanto el Departamento de Justicia como la Administración de Reglamentos y Permisos o alguna otra agencia impugne los permisos concedidos o, incluso, los asientos regístrales relacionados a la extensión y cabida de los terrenos en controversia. Ello, claro está, tendrá que hacerse mediante la acción legal o administrativa que proceda en derecho.
Por las razones expuestas anteriormente, estamos conformes con la Resolución emitida por el Tribunal que de *773 niega la moción de reconsideración presentada por el Estado.

(1) Todos los jueces de este Tribunal coincidieron en que, por lo menos, hasta 1968 el estado de derecho puertorriqueño provenía de la Ley de Puertos española de 1886 y del Art. 22 de su Instrucción administrativa, la cual establecía un esquema privatizador de los terrenos ganados al mar que no fue alterado por la Ley Foraker, el Código Civil de 1902 ni la Ley de Puertos de 1928. Es necesario destacar que la opinión disidente y concurrente de la Jueza Asociada Señora Fiol Matta concurre con la opinión mayoritaria en cuanto al Condado Bay Parcel, la parcela a la que le aplica exclusivamente el derecho puertorriqueño, y difiere de la mayoría en cuanto al Coast Guard Parcel por considerar que, tan reciente como en 1991, se afectó cuando el Gobierno de Puerto Rico la adquirió.

(2) Además, durante el transcurso del caso de autos el Estado nunca presentó prueba para impugnar la validez de los referidos asientos, más allá de elaborar una teoría novel en cuanto a la clasificación dominical de los terrenos ganados al mar.

(3) Como se indica en nuestra opinión, tales obras de relleno ocurrieron en una época en la cual se utilizó esta técnica de modificación al litoral en diversas zonas históricas de Puerto Rico. Independientemente del origen o contexto sociocultural que motivó el asentamiento de estas comunidades en terrenos desecados o ganados al mar, lo cierto es que éstas se erigieron en terrenos que en algún momento estaban sumergidos y que, por lo tanto, formaban parte del dominio público marítimo-terrestre.